Our next oral argument case is Kroeker, United States v. Kroeker, 24-3060. Judge Hartz, may it please the Court. Mr. Kroeker was convicted at trial of one count of receipt of child pornography and one count of possession of child pornography. The Court should vacate the receipt conviction and remand for a new trial because the district court's lascivious exhibition instruction stated the law and failed to provide the jury with a meaningful, intelligent understanding of the relevant legal principles. This Court should also reverse the possession conviction because the evidence was insufficient to prove that the substantive content of any image of child pornography crossed state lines. Counsel, the picture that's the subject of this is not in the record. Oh, it's not? No, we couldn't find it anyway, and I would like you to submit one for us so we have a complete record. So we filed a motion to supplement the record with it, but I'll check because it should be in there. Thank you. Yeah, so I'm just going to dive in. Well, now on the, did you say that the interstate issue is the big issue here? Well, I mean, you know, I don't think that's... One guy was in Nebraska, one guy is in Kansas. How did it get from Nebraska to Kansas? Okay, so that image is just the receipt count. The possession count does not involve that image. So the reason why the evidence is insufficient on the possession count is because there was no evidence that any of the images with respect to that count, the substantive content of the images crossed state lines. The government proceeded on a different commerce theory in the District Court, not the one that was charged in the indictment. If that makes sense? No. I mean, if the possession is the same as the receipt, how do you separate them out? Because they're different counts. Well, were they different images? Yes, yes, yes, yes. They're different images? Yes, so counts who involve... Actually, there's no images in the record that I saw. Nobody mentions in the record. So, well, maybe it'll solve itself if you get me the, or get us the... Okay. ...the images. But the image of the child, I don't want to describe it, that was count one. Yes. There are different images for count two.  And your argument is that, so what if they were acquired through an instrumentality of commerce?  They weren't moved themselves in commerce, at least there's no evidence. Right, that's exactly right. I mean, our argument is just a straight application of the Supreme Court's prodigy and this court's opinion in Schaeffer and Sturm and everything that's followed. Just, that's it. It's very simple. So, and I guess to put a pin on the point that you're talking about, if the images are the same, if they, which they aren't, but if they were, then you would have a double-jeopardy problem, and you would have to vacate the possession count anyway, because it would be multiplicitous under this court's precedent. So, just to make that point, but they are different. So, you could, so I'm not making that multiplicity argument. I'm just using that to explain why the images have to be different. Okay, so we obviously think there are a number of problems with this instruction on lascivious exhibition. So, I think what I want to, so I can just highlight the, essentially the four overarching problems. One is this idea that we're using the phrase indecent exposure, usually to incite lust, which we don't think is consistent with the ordinary meaning of lascivious. The second is the use of the DOS factors, which we think are problematic in a non-production case, and also because they are sufficiency principles, appellate review sufficiency principles. It should not exist within jury instructions. The third point is this idea that the court instructed the jury to look at what a pedophile would think of the image. We think that is inconsistent with the Supreme Court's opinion in Williams and the several other circuits don't agree with that. And then the fourth point is this idea that they included definitions of virtual or morph pornography, which this case did not involve that. The indictment actually didn't include those provisions. They shouldn't have been in there anyway. And when read literally, those definitions are not helpful in terms of identifying this image as one that is lascivious. So that's a ton of problems with this. The first three. Yeah. Aren't they all involved with the DOS factors? No, they're not. The indecent exposure language is not part of DOST, and either is the attraction to pedophile's language. That, I don't know where. I tried to figure out where that came from, and there is this 11th Circuit pattern instruction that has some of the language maybe, but it doesn't appear. I don't understand where the 11th Circuit got the language from, and I think the pedophile language maybe came from some district courts in Illinois. But none of that language appears that I could tell in an appellate decision that says that courts should be giving that language. So aside from the DOS factors, I'm taking them in the order you mentioned.  Indecent exposure, that's independent of the DOST argument. It is, yeah. And the pedophile language is independent of the DOS factors. Yes, it is. Yeah. Let me ask about the DOS factors. Yeah. I mean, we've said that the fact finder can, maybe should, use the DOS factors to determine whether the statute's violated. Maybe we were wrong. Maybe we should have paid more attention to the sixth factor. We're bound by that, don't you think? So I don't think you're bound by that in this case because you've only said that in production cases. Yeah, but why should it be different? So it should be different because the production involves the producer's intent, right? So this court in Wells described the sixth DOS factor as an additional element requiring additional proof to prove a Section 2251 offense. And I think that flows from the statutory language that requires that the individual produce the image for the purpose of producing an image of sexually explicit conduct. So essentially, and then if you read Wells, what this court does with the DOS factors is simply go through them and apply them to determine the producer's intent. That's all Wells does. Doing that in this case makes no sense because Croker did not produce the image. So then if we're convicting Croker of knowingly receiving child pornography because it would be based on what some other guy intended when he made the image. And we don't think that makes really any sense. I don't know where that comes from or why you would do that. So I do think you can, although I understand lascivious exhibition exists within an umbrella definition, I do think it's important to understand that the DOS factors are not definitional. And I think there's some confusion about that because they exist within how the court is trying to define, but that's really not what they are. The definitional aspect of the instruction was the indecent exposure usually to incite lust. What comes after is this instruction that, okay, here are six things. You can consider them. You don't have to consider them. You can give whatever weight you want to them. That's not a definition. No word in a dictionary is defined that way. So I think that's why you can easily take those factors and say, we don't have to deal with them here. This is not a production case. We don't care about the intent of the producer. And I think really you have to do that because of the Supreme Court's opinion in Williams. So Williams makes very clear that that case involved the pandering statute subsection, which comes straight after this one. That's three, subsection three. We're dealing with two. And the court essentially explains that if an individual panders non-child pornography, he can't be convicted simply because the individual who receives the image thinks, wow, I think that's child pornography. It's not how it works. That is the identical reasoning we're using here on both the pedophile language and the intent, producer's intent language, in that you can't just say just because somebody thinks something is pornography, you're guilty of possessing pornography. It actually has to be pornography. And I think when you, especially in this case, I mean, maybe there are some cases where this wouldn't matter, but this case was all about how these two guys, these chats, the whole thing was how these two guys had pedophilic tendencies. And so if you're going to instruct the jury, I mean, this could have been a picture of a kid eating a ham sandwich and a jury could have convicted on these instructions just the way in which they read. So hopefully that sort of gets the feel for our argument and how you shouldn't be, you have to gauge the image on the content of the image and not what somebody thinks about what the image is. And that's the main problem, we think, with the instruction. You know, I will note this is something that is also addressed in the Supreme Court cases. This is important in this context because you do have a First Amendment baseline, right? So if something is not pornography, is not child pornography, it is actually protective speech. And I think that is sort of why this type of instruction is especially problematic, because of that baseline. If we are instructing juries that they can convict based on, you know, without deciding that the image is in fact pornography, then we are allowing juries to convict based on protective speech. And so I think, and there's a lot of discussion that if you read Williams, I think Justice Souter's dissent in Williams is pretty good on that. The dissent? Well, it's a dissent, but it's not a dissent in that way. I mean, that part of it is consistent with the majority opinion. I think the only other thing that I would note is the D.C. Circuit's opinion in Hilly, which we cite, which rejected the DOS factors. Actually, I probably should have cited it more. There's a lot of good language in there that is consistent with a lot of what we said and a lot of what the other circuits have said. And with that, I will, if there are no further questions, I can reserve. Well, have you addressed count two, really? I mean, I can take 20 seconds, but it's very simple. Well, if you don't erase it now, I'm not going to let you rebut on that. Well, I already did. I feel like I already did. My point is just it's consistent with Storoni. The government's argument is not, is just in direct contravention of Storoni, its prodigy, and Sturm, Schaefer, and its prodigy. It just is. I don't know how else to articulate that other than it's inconsistent with the precedent. Okay, I'll reserve the remainder of my time. Thank you. Good morning, Your Honors. James Brown for the United States. May it please the Court. Your Honors, to start off with a housekeeping matter about the exhibits and where they are. Mr. Hansmeier did file a motion to supplement the record with the exhibits, and we filed a response, and then I think we sent the exhibits here in a conventional format. So as far as we know, the exhibits are somewhere with this Court. Somewhere. When I get back, I'll try to figure out what actually happened, and if they didn't get sent for some reason, I'll definitely send them. And I understand that the Court wants all the exhibits, exhibits 1 through 17. So I'll definitely try to make that happen. I'd like to start with the first issue first, and that is the jury instruction, and I will address count two. As far as the jury instruction goes, we think the instruction was a correct statement of law. Now, Mr. Cropper has four problems with the instructions, and I'll go down those problems in the order that he addressed them. The first problem is that the instruction defined lascivious as indecent, used the word indecent exposure. That was a correct statement of the law. The statute, of course, as the Court knows, doesn't define the word lascivious. So when the statute doesn't define a word, you go to the dictionary. If you go to Black's Law Dictionary and look up the word lascivious, it will use the word indecent to define the word lascivious. So because the Court used a word that Black's Law says is the same as lascivious and defines the word lascivious, that was not an incorrect statement of the governing law. That's a correct statement. You're saying Black's Law Dictionary uses the word indecent. That's correct. And that's Black's Law, 5th edition, page 794. Based on what? I'm sorry. Black's Law Dictionary, 5th edition, page 794. The fact that you're saying the 5th, does that mean that it doesn't appear in later editions? We didn't dig that deep. I can look and see. The 5th edition is pretty old. Well. I think they're at 12 or something now. It may be. And it would surprise me if it weren't defined the same. But we probably need to get the most recent Black's Law Dictionary. The second problem that Mr. Coker has with the language is the language of, usually, to incite lust that the district court used. That also comes from Black's Law Dictionary. That's a correct statement of the law. If you look at Black's Law Dictionary, the same site that I gave before, it defines lascivious as, quote, tending to incite lust, which, in our view, is the same as usually to incite lust. So that's also a correct statement of the law that is sourced from Black's Law Dictionary, or at least Black's Law provides some support for what the district court did. In any event, it's not an incorrect statement of the law because that's how Black's Law defines lascivious. His second issue comes with the DOS factors. We've argued that the DOS factors represent neutral reference points for a jury to consider when determining whether an image is lascivious. The reason, of course, and this court knows that they're used, is because the statute does not define the term lascivious. And the danger... Why should the recipients or producers... Why is that person's intent relevant? We're talking about the sixth factor. That's really what they're challenging, is the sixth of the DOS factors. We take their point. And before answering, I'd like to point out that by our count, seven circuits have applied the DOS factors in possession or receipt cases. Seven circuits have. Um, several of the cases that we cite in footnote, two of our briefs have applied those in possession cases. If you look at the 11th Circuit's pattern instruction for receiving or possessing child pornography, they use the DOS factors in their pattern instruction. I'll give the court a 28-J letter listing all the cases. But seven circuits apply the DOS factors in possession cases. So it's not a crazy thing for the district court to have done that here. It was a correct statement of the law. Now we get to Your Honor's question. What about... What relevance does the producer's intent have in a possession case? And Your Honor, here it can be relevant depending on the context. But here it is relevant because... Well, let me do a wider lens view. The intent has the ability... If you look at the intent, you can use that intent to basically exclude all types of images from being child... Lascivious exhibitions or child pornography. If you look at the intent, let's say we have a picture of a child in a bathtub at a birthday party. You know, the DOS factors under the intent factor, you would say there's no way there's any intent that that would be a lascivious exhibition. It's a kid's picture at a birthday party. That intent can exclude a photo that is clinical, that is risque, that is completely innocuous. So the intent is relevant. But that same picture might excite a pederast or pedophile. And then... So if the pederast or pedophile is the one possessing it, the same picture that you just said wouldn't satisfy the definition, in that circumstance, it would be criminal, is what you're saying. We would... No, we're not saying that. We want to be very... We want to be crystal clear. It takes two things for that to be criminal. Number one, as the court just said, the pederast has to have the... Has to think it's lascivious, right? Has to think it's actually child pornography. That comes from Williams. The second part is the image actually has to meet the statutory definition of lascivious. There's an objective thing. So what Williams was saying in that case, there's an objective consideration. So if a pederast thinks that something is exciting, or for lack of a better word, thinks that something is really exciting, that doesn't automatically make it child pornography. You suggested the sixth factor was included just to limit, so that even if all the first five factors are satisfied, if it's not, if the intent was not to arouse sexual... It can serve a very limiting purpose in that respect, and prevent exactly the problem that the court described. Is that how it's been used? Well, if you... It theoretically could be used. I can't cite a case off the top of my head where it's been used like that, but that shows why it's relevant in a possession case. And now... Now, I get too animated sometimes. So now let's get to this case, okay? So it was super relevant here because the defendant got the picture from another pedophile. And they were talking about the picture, and the context in which they were talking about it revealed the producer's intent. He intended to take a picture of his son's private parts, and he was talking to another pedophile about them. The pedophile said, yeah, I'd like to see, and they sent the picture. So that shows the intent behind it of the person who took the picture. If he said, when I took the picture, and it was just an innocent picture taken by my wife, and she thought it was a cute picture and a cute pose, and we have it in a scrapbook somewhere for our family photo album, then that would be a different thing. Then he would be able to argue that there's no intent and use the Doss factor to argue that. But here it's probative. It's probative because we have the full context of the picture and how it was taken and why it was taken. So there's a scienter requirement here? There has to be an intent? There has to... Okay, so to convict on a child pornography charge, Williams page 301... For possession, for possession. Okay, possession charge. Williams case at page 301 says, the defendant must believe the picture contains certain material. In other words, he must believe that it's child pornography or it's lascivious and, quote, that the material in fact, and not merely in his estimation, must meet the statutory definition. So there is a scienter part on the part of the defendant. Can you say that again? Was the language you just... The defendant must believe that the picture contains certain material referring to child pornography. And that material, in fact, and not merely in his estimation, must meet the statutory definition. Then it goes on where the material at issue is a harmless picture of a child in a bathtub and the defendant knowing that material erroneously believe that it constitutes lascivious exhibition of the generals, the statute has no application. So the defendant has to think it's child pornography. That's the intent the defendant has to have, but it actually has to be child pornography. And whether it actually is child pornography is in part evaluated by the intent of the person who produced the image. That's what the Sixth Aus Factor gives you in a possession case. What's troublesome is if you don't have that evidence of, well, no matter what the evidence is on the producer, if you can take a picture and I think it's really, really sexy, but nobody else would, does that turn that into a pornographic picture? No, no. And that's what- Does it turn me into a possessor of a pornographic, even if I think, wow, look at that. Absolutely not. And that's what the Williams case stands for. The passage that I just read stands for that very proposition. It does not turn your honor into a person who possesses prohibited materials. Correct. The material possessed actually has to meet the statutory definition of a lascivious exhibition. I have to study that sentence you quoted because my impression is it was saying even if the person is aroused, that's irrelevant if it's not pornography. It goes to the intent to possess requirement, but it doesn't go to whether it's a lascivious exhibition. That's what it does. There's two parts to it. Somebody has to have, this has to be knowing possession, right? And that it also has, the thing you possessed actually has to be- When you possess, you have to know that it's child pornography. And I thought what you just quoted is saying you have to know it's child pornography, but the fact that you think it's child pornography isn't enough when it's not child pornography. It's not enough. The fact that you think it's child pornography is not enough. That's what the Williams case says. That's what it says. But that goes to point out why the 6-DOS factor is probative in this case. So even though it may not be probative in another possession case, it was probative here. And for that reason, it was not an incorrect statement of the law. It's pretty subtle. Let me think about that. I'm sorry? I was just saying I have to think about this. This is subtle. I think if the court goes back to page 301 of Williams and reads that, that's the only reading that the court can come up with that's actually reasonable. But I'd like to move on to one other point since my time is going. And that is, if Mr. Croker objects to the instruction that the material can be attracted to pedophiles, that sentence is a correct statement of the law. That sentence is an extrapolation of a sentence from the Ferber case where the Ferber court said that to be child pornography, and I'm quoting from page 764, a trier of fact need not find that the material appears to the prurient interest of the average person. So that's basically the sentence. Like this opens up the entire universe to what the individual might think it is. Your Honor, we're just going by what the Supreme Court says. A trier of fact need not find that the material appears to the prurient interest of the average person, which means it can appeal to a person who has non-average interests, such as a pedophile. But that makes something pornographic that is not pornographic. No. Because you think it is, does not make it so. We agree with what the court just said. And as we've explained, just because somebody thinks something is pornographic doesn't make it pornographic because that material has to comply with the statutory definition of a lascivious exhibition. So that's... It sounds like what you're saying is just because 98% of people wouldn't be aroused by this child pornography doesn't mean it's not child pornography. We're talking about people who like child pornography. Is that the point? To be child pornography, okay. I was trying to help you. All right. Well, we appreciate it. And yes, we'll take the help. That being said, here's where the court was going. To be obscenity, the trier of fact must find that the material appears to the prurient interest of the average person. That's what the court said in Miller. In Ferber, the court made a distinction to be child pornography, which is different from obscenity. A trier of fact need not find the material speak to the prurient interest of the average person. So that means that the material can appeal to the prurient interest of the non-average person, including a pedophile. So what the court statement was, was a correct extrapolation from that statement in Ferber. You've got one minute. Do you want to address count too? Because I don't see where you have the interstate transportation. Well, I could talk for 10 minutes about count too. I think we're going to have to end up standing on our briefs. The interstate transportation is transportation by the internet and by the computer. But we don't have any evidence that it went interstate on the computer, do we? Okay. So let me go at it this way. The fact that these pictures had commercial websites indicates that they were widely available on a worldwide basis to users around the world. Let's say this court, just for an example, let's say this court downloads an image from CNN today. Court goes back in chambers and downloads an image from CNN. That image that the court downloaded doesn't have to travel outside of Colorado to meet the interstate nexus. It is already in interstate commerce. It is necessarily traveled beyond Colorado before the court downloaded that image. I think to be covered by the Commerce Clause, you're probably right, but not by the language of this specific statute. The image has to have traveled. You have to prove that this image that the one person sent to the other had traveled in interstate commerce. No, we would respectfully disagree and we would point the court to that. I see my time is up. We would point to the court to the Stern case that we cited on page 24. The visual depiction does not refer to a particular item. It refers to whether the image has been mailed or transported at any point in time. That's page 24 of our brief. And I thank the court for asking that question because it's an important point to clarify. Thank you, counsel. Please affirm. All right, let me try to make four or five points just on that point. Sturm is fine. Sturm is about the substantive content of the image. There's no evidence that the substantive content of any of these images cross state lines. So we talk about Sturm at length. Our argument is not inconsistent with Sturm. So I'm going to move to the receipt count and I want to make at least three points. The first point on Ferber. So the government is wrong about Ferber. That language from Ferber is language that rejects the obscenity standard. So the language that the purian interest, what that language means, the Supreme Court was explaining, we are saying child pornography can be something less than obscene. And you don't have to take my word for it. So in Ashcroft v. Free Speech Coalition, the court said, quote, Ferber's judgment about child pornography was based on how it was made, not on what it communicated. The government, quote, cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts. Protected speech does not become unprotected merely because it resembles the latter. And then Williams, I did not understand the government's argument about page 301 of Williams. That paragraph supports our point. It has to be pornography. It can't just be a picture that someone thinks is pornography. And that's the problem with the instructions in this case. That it allowed a jury to convict because these two guys thought it was pornographic. That's the problem. If I can try to get these other two points in real fast. Well, I just talked about Williams. I will say if you're interested in how Congress could write a statute that encompasses intent, like the viewer's intent or the producer's intent, read the pandering statute, the one that follows. So it's 2252 A3B. That has an intent. Here, let me, I got 10 seconds. Oh, I left it at that. But just read that language. There's language in there that talks, that does that, that includes that. That's not in A2. Oh, and I'm out of time. Yeah. The prosecution went over a little bit. Can I make... You have 20 seconds for the last point. Yes, thank you. So the last point is on the indecent exposure language. So we don't define, I hope we don't define terms just because we can find a word in a dictionary. So if you, I could only, the only dictionary I could find that defines lascivious as indecent was Black's Law Dictionary. If you look at any other dictionary, it's not in there. If you look at the instructions that are given in these cases, in the appellate decisions, it's not in there. And we talked about Carlin's filthy words monologue. If you read that case, the Pacifica case, the Supreme Court talks about how we shouldn't be using indecent, and it's different than being lascivious. Let me just ask one question. Yeah. Then you're done. Which edition of Blacks did you look at? So I think the relevant, as I understand statutory interpretation, the relevant... Just tell me which, well, I'm not disputing that the word indecent does exist in Blacks. I'm not disputing that. The fifth edition? Yes. Well, okay. I guess my, we should be looking at the definition of the dictionary that existed when this was enacted in 1978. And I don't know if that one has indecent, but my point is I don't think it matters. Thank you. Okay, thanks. Thank you, counsel. Case is submitted.